IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ADRIAN DESHUN DELK,

    Plaintiff,

v.                                      No. 1:22-cv-02540-JDB-cgc

CORECIVIC d/b/a HARDEMAN COUNTY
CORRECTIONAL FACILITY, *et al.*,

    Defendants.

---

ORDER OVERRULING PLAINTIFF'S OBJECTIONS
AND
AFFIRMING ORDER OF THE MAGISTRATE JUDGE

---

    This matter is before the undersigned on a timely-filed appeal[1] by the Plaintiff, Adrian Deshun Delk, from an order[2] entered by United States Magistrate Judge Charmiane G. Claxton excluding the opinion of his proposed expert, Roy Timothy Gravette. (Docket Entry ("D.E.") 50.[3]) As Defendants have responded to the appeal (D.E. 53), the issues raised therein are ripe for disposition.

    Title 28 U.S.C. § 636 permits a district judge, barring certain exceptions not present here, to designate a magistrate judge "to hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). The main objective of the provision was to "create a

---

[1] A party may appeal the order of a magistrate judge within fourteen days after being served with a copy of the order. Fed. R. Civ. P. 72(a); LR 72.1(g)(1).

[2] At one point in his appellate brief, Plaintiff erroneously refers to the order as "Magistrate Judge's report and recommendation." (D.E. 52 at PageID 1011.)

[3] Unless otherwise noted, record citations are to the instant case.

supplementary judicial power designed to meet the ebb and flow of the demands made on the Federal judiciary." *Roell v. Withrow*, 538 U.S. 580, 588 (2003) (internal quotation marks omitted).

Under the statute, "a district court may 'reconsider' a magistrate judge's decision on a non-dispositive, non-excepted, pending pretrial matter only if it is 'clearly erroneous or contrary to law'" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993)) (some internal quotation marks omitted), *reh'g en banc denied* (Nov. 14, 2019); *see also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."); LR 72.1(g)(1) ("The presiding district judge may reconsider any order determining a pretrial matter where it has been shown that the magistrate judges' order is clearly erroneous or contrary to law.").

The standard of review is a limited one. *Massey*, 7 F.3d at 509. "A factual finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bisig*, 940 F.3d at 219 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)) (brackets omitted). "[T]he question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one [the reviewing court] would draw." *United States v. Reed*, 72 F.4th 174, 190 (6th Cir. 2023). Instead, the test is whether the magistrate judge's "construction of that evidence is a reasonable one." *Visteon Global Tech., Inc. v. Garmin Int'l, Inc.*, 903 F. Supp. 2d 521, 524 (E.D. Mich. 2012) (quoting *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)).

"[A] [l]egal conclusion[] [is] reviewed de novo and contrary to law only if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Saginaw Chippewa Indian Tribe*

*of Mich. v. Blue Cross Blue Shield of Mich.*, ___ F. Supp. 3d ___, 2023 WL 4623871, at *4 (E.D. Mich. July 19, 2023) (quoting *Bisig*, 940 F.3d at 219) (internal quotation marks omitted), *recons. denied,* 2023 WL 4980034 (E.D. Mich. Aug. 3, 2023); *see also Myers v. City of Centerville*, Case No. 3:20-cv-402, 2023 WL 3611459, at *2 (S.D. Ohio May 24, 2023) (when examining legal conclusions under the more lenient "contrary-to-law" standard, a court has plenary power to "reject any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent"). "Although legal authority may support an objection, the critical inquiry is whether there is legal authority that supports the magistrate[ judge]'s conclusion; if so, the magistrate judge did not act contrary to law." *Stevens-Bratton v. TruGreen, Inc.*, No. 2:15-cv-2472, 2020 WL 3086571, at *3 (W.D. Tenn. June 10, 2020) (quoting *Carmona v. Wright*, 233 F.R.D. 270, 276 (N.D.N.Y. 2006)) (cleaned up). "That reasonable minds may differ on the wisdom of a legal conclusion does not mean it is clearly erroneous or contrary to law." *Id.* (quoting *Carmona*, 233 F.R.D. at 276).

The district court's review is "deferential, and mere disagreement with the [m]agistrate [j]udge and/or an assertion that the [m]agistrate [j]udge should have ruled differently does not rise to a clear error of fact or a decision contrary to law." *EPAC Tech., Inc. v. Harpercollins Christian Publ'g, Inc.*, No. 3:12-cv-00463, 2023 WL 2505905, at *3 (M.D. Tenn. Mar. 14, 2023) (citation omitted). It has been recognized that "it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." *Murphy v. May*, Case No. 1:21-cv-12089, 2023 WL 4964296, at *2 (E.D. Mich. Aug. 3, 2023) (quoting 12 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 3029 (3d ed. 2022)); *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, Civil Action No. 3:16-CV-024-CHB, 2022 WL 15722629, at *2 (W.D. Ky. May 2, 2022) (quoting same). The burden of demonstrating that the magistrate judge's

decision was clearly erroneous or contrary to law rests on the shoulders of the objector. *United States v. Glatz*, No. 3:19-CR-218-TAV-DCP-1, 2021 WL 4943056, at *5 (E.D. Tenn. Oct. 22, 2021).

In 2016, Delk filed a pro se complaint alleging violation of his constitutional rights pursuant to 42 U.S.C. § 1983 against Hardeman County Correctional Facility ("HCCF"), which is operated by CoreCivic, and several of its employees (the "First Lawsuit"). (Case No. 1:16-cv-01275-JDB-cgc, D.E. 1.) On May 28, 2021, during the pendency of that action, Plaintiff disclosed Gravette as an expert and submitted his report. (*Id.*, D.E. 137.) On July 16, 2021, the Defendants disclosed their expert, Dr. John G. Peters. (*Id.*, D.E. 138.) Gravette's supplemental/rebuttal report was filed August 10, 2021. (*Id.*, D.E. 139.) Following dismissal of the First Lawsuit without prejudice and entry of judgment on March 25, 2022, (*id.*, D.E. 159-60), Delk, on August 18, 2022, brought the instant counseled action alleging the same claims. (D.E. 1.) On April 28, 2023, Defendants moved to exclude Gravette's proposed expert testimony. (D.E. 31.) The motion was referred to the magistrate judge for determination and/or report and recommendation. (D.E. 33.) Judge Claxton's order was entered on July 20, 2023. (D.E. 50.)

Plaintiff has alleged that Defendants violated his rights under the Eighth Amendment by, among other things, failing to protect him from four assaults by other inmates, many of whom were gang members, during his incarceration at HCCF. In support of his claims, he proffers Gravette as an expert in corrections matters.

The proposed expert is a twenty-year corrections veteran. He began his corrections career as an officer at federal prison facilities in 1990 and worked his way through the ranks to the position of associate warden at three federal prison facilities. Throughout his career, he supervised inmate populations in housing units; made facility rounds and interacted with inmates in their

4

assigned units; supervised correctional officers in aspects of safety and security; and, as an associate warden, wrote and critiqued local policy and made decisions affecting safety and security matters using principles of correctional management, federal law, and American Correctional Association ("ACA") standards; authored lesson plans, taught classes, and wrote staff performance appraisals; and commanded and was involved in incidents of emergency response to inmate disturbances, assaults, and homicides.  He also works as a litigation consultant on corrections matters.

Gravette concluded in his report that "it is more probable than not the allegations presented in the case material by Adrian Delk have merit and I am of the opinion the CoreCivic staff at HCCF failed to protect Adrian Delk from his assailants." (D.E. 31-1 at PageID 240.)  He stated, "I applied my experience and training and my twenty-year career as a corrections veteran concerning inmate culture, correctional investigative practices, sound correctional management, proper correctional environmental practices, inmate management and correctional administration experience in forming my opinions" and "careful[ly] evaluat[ed] . . . the facts and circumstances that are known to me as a result of the review of the materials available . . . and t[ook] into account my experience, training and knowledge of the practices that should be standard in all correctional facilities[.]"  (*Id.* at PageID 236.)

With respect to issues raised in this case generally, the expert related that "[p]rison gangs use various methods to extort and victimize nonaffiliated inmates with assault and intimidation being the most prevalent of their tactics" and that CoreCivic prisons, including HCCF, were understaffed.  (*Id.* at PageID 236, 240-41.)  Regarding the initial assault suffered by Delk, which allegedly arose from a failure of one of the individual Defendants to respond to Plaintiff's request for a cell change, Gravette opined:

5

> Based on my experience when an inmate requests a cell change for legitimate reasons a staff member is obligated to take some action to resolve the request and to simply deny the request is not what I would expect of a case manager who has the responsibility for inmate safety as part of their daily duties.  This level of indifference to such requests needlessly places an inmate[']s safety at risk.  Failure to promptly respond to an inmate[']s to [sic] requests for cell changes or protective custody requests indicates training, or cultural problems within the facility.

(*Id.* at PageID 237.)  The beating took place when other individual Defendants permitted both the upper and lower tiers of Plaintiff's pod to be open and unsecure at the same time, which Gravette concluded was a violation of the facility's tier management supervision model as indicated by its housing assignments policy.  Based on his experience, he opined, if this violation of policy were not a custom or practice, other staff members in the area would have stopped it.

As to a second assault that Delk apparently did not report to staff, the expert opined that, based on his experience, it was not uncommon for inmates to be reluctant to report assaults by other prisoners because it could result in further attacks or even murder.  Third and fourth assaults on Delk, which allegedly occurred after concerns for his safety voiced to prison staff went unheeded, were also, in Gravette's opinion, the result of indifference on the part of officials to Plaintiff's safety and wellbeing.  He concluded:

> Based upon my knowledge, education, training, and years of experience working as a correctional professional, it is my unequivocal opinion that the Defendants in this case recklessly violated established correctional customs, standards of care, and practices in their treatment of Adrian Delk.  Those customs include removing an inmate from harm's way.  Based on my review of the case material Delk's requests and the requests by fellow inmates to have him moved into another cell were ignored by staff including unit management staff and correctional/security staff.  Had the staff taken appropriate action to determine if Delk's requests were legitimate they could have taken steps to remove him from the area and possibly avoided the assaults he was subjected to at the HCCF at the hands of known gang members.

(*Id.* at PageID 241-42.)

In his supplemental/rebuttal opinion in response to Dr. Peters' report, Gravette stated that a reasonable and trained corrections officer would have investigated Delk's claims of threats by gang members and that, based on his experience and training, failure to follow security procedures and policies as directed could result in prisoner injury.  He further opined, in response to Peters' opinion that Plaintiff failed to follow proper procedures for requesting transfer from one cell to another, that, based on his experience and training, a threat to inmate safety, no matter how conveyed, should be addressed by staff.

Defendants filed their motion for exclusion of Gravette's opinion pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence.[4]  The rule requires that a proposed expert be "qualified as an expert by knowledge, skill, experience, training, or education" and that his opinion "will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  The rule further mandates that the opinion be "based on sufficient facts or data" and is "the product of reliable principles and methods," and that the expert "reliably applied the principles and methods to the facts of the case."  *Id.*

Defendants' motion focused on the third requirement--reliability.  In *Daubert*, the United States Supreme Court recognized the district courts' gatekeeping role under Rule 702 in "ensuring that an expert's testimony . . . rests on a reliable foundation[.]"  *Daubert*, 509 U.S. at 597.  In order to perform their gatekeeping duty, the courts often consider the so-called *Daubert* factors, which include "whether an expert's theory has been tested, is the subject of peer review and publication, has a permissible error rate, follows established standards, and receives 'general acceptance' within

---

[4] The motion was filed on the same day as Defendants' motion for summary judgment as to all of Plaintiff's claims.  (D.E. 32.)  The dispositive motion remains pending.

a 'relevant scientific community.'" *United States v. Mallory*, 902 F.3d 584, 592-93 (6th Cir. 2018) (citing *Daubert*, 509 U.S. at 593-94). These factors are to be flexibly applied, however, as they "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 150 (1999). The factors should come into play "only where they are reasonable measures of the reliability of expert testimony." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001)) (internal quotation marks omitted). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note (2000 amendment). The court's task is "to determine whether [an expert's opinion] rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal*, 527 F.3d at 529-30. Where experience forms the basis for a witness's expertise, he "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note (2000 amendment). "[T]he *ipse dixit* of the expert alone is not sufficient to permit the admission of an opinion." *Madej v. Maiden*, 951 F.3d 364, 375 (6th Cir.) (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010)) (cleaned up), *cert. denied*, 141 S. Ct. 612 (2020). It is the proponent of the proffered expert testimony who must show its reliability by a preponderance of proof. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

"[T]he district court is not bound by any explicit test when determining reliability" of an expert's opinion. *United States v. LaVictor*, 848 F.3d 428, 443 (6th Cir. 2017). Rather, it "operates with wide latitude" and as such "must be afforded considerable leeway in deciding how to go about determining whether particular expert testimony is reliable." *Id.* (cleaned up); *see Whirley v.*

8

*Kawasaki Motors Corp. U.S.A.*, No. 1:04-cv-1145-T-An, 2006 WL 8435273, at *3 (W.D. Tenn. May 12, 2006) ("[T]he gatekeeper--here, the Magistrate Judge--must have considerable leeway in deciding in a particular case how to determine and how to go about determining whether particular expert testimony is reliable."); *see also Wilder v. Rockdale Cnty.*, Civil Action No. 1:13-CV-2715-RWS, 2016 WL 11745936, at *8 (N.D. Ga. Sept. 28, 2016) (applying broad discretion in determining reliability of expert testimony in corrections context).  In the exercise of that wide latitude, Judge Claxton determined that, while it could be said that Gravette's report revealed that he possessed specialized knowledge in the field of corrections and that he had reviewed voluminous documentation relative to CoreCivic's policies and procedures and the assaults on Plaintiff from which this lawsuit arose, his report "does not set forth the principles or methodology that guided him to his conclusions.  It is this process which the Court must find to be reliable under Rule 702 for expert testimony to be permitted.  Absent evidence for the Court to test the expert opinion's reliability, the expert's opinion must be excluded."  (D.E. 50 at PageID 1007-08).

The magistrate judge analyzed the requirements of Rule 702 and *Daubert* and recognized that the district court must perform its gatekeeping function even where experience forms the basis for a witness's expertise.  She independently analogized the issue before her to *Starnes v. Sears Roebuck & Co.*, No. 01-2804 B AN, 2005 WL 3434637, at **4-5 (W.D. Tenn. Dec. 14, 2005), in which the undersigned affirmed the magistrate judge's exclusion of a party's expert as unreliable on the grounds that the expert, despite being determined by this Court to be qualified by decades-long experience and having reviewed numerous documents, offered no support for his opinion or explained how his experience led to his conclusion.  Judge Claxton also cited to *Bethea v. Bristol Lodge Corp.*, No. Civ.A. 01-612, 2003 WL 21146146, at *7 (E.D. Pa. May 19, 2003), a case found

instructive by the undersigned in *Starnes*, in which the court excluded an experienced expert's testimony because he failed to explain the means by which he reached his conclusions.

Delk argues in the instant appeal that the magistrate judge's determination was clearly erroneous and contrary to law.  At the outset, to the extent he insists that Gravette is qualified to offer an expert opinion or that experience is sufficient to satisfy the qualification requirement, neither Judge Claxton nor, indeed, the Defendants, have suggested otherwise.  Therefore, the Court will not expend its limited resources discussing those issues.  Its attention instead will be centered, as were the motion and order, on reliability.

Plaintiff cites to an unpublished case from this circuit, *Luna v. Bell*, No. 3:11-cv-00093, 2013 WL 12316066 (M.D. Tenn. Aug. 1, 2013), as supportive of his position that Gravette's opinion is sufficiently reliable.  In that case, which arose from the death of an inmate at the hands of correctional officers following a cell extraction, the defendants sought to call corrections expert James G. Warner, Jr., who opined that officers were justified in extracting the decedent from his cell and did not use excessive force.  *Luna*, 2013 WL 12316066, at \*\*1-2.  The plaintiff moved to exclude the opinion on reliability grounds, arguing that Warner's testimony was based on "no facts or data" and that his opinions were "not the product of any principles and methods." *Id.* at \*5.  The district court sided with the defendants, finding that Warner "has sufficiently explained that he relied on and applied his years of experience participating in, supervising, and reviewing cell extractions to deliver his conclusions in this matter." *Id.* at \*6.  Thus, the district court found no reason to conclude that the opinion lacked sufficient reliability to pass muster under Rule 702 and *Daubert*.  *Id.*

The Court is unpersuaded that Judge Claxton's findings with respect to Gravette's opinions were in any way unreasonable.[5] Whether *Luna* provides some support for a finding of reliability is not the question this Court must answer.[6] It must instead determine "whether there is legal authority that supports the magistrate[ judge]'s conclusion[.]" *See Stevens-Bratton*, 2020 WL 3086571, at *3. *Starnes* and *Bethea* offer such support, and Delk does not contend otherwise. As it is an unpublished opinion, *Luna* is not binding on this Court. *See Meadows v. City of Walker, Mich.*, 46 F.4th 416, 424 (6th Cir. 2022), *reh'g en banc denied*, 2022 WL 10219851 (6th Cir. Sept. 26, 2022). Plaintiff cites to no *binding* authority that contradicts the cases supporting Judge Claxton's decision. A magistrate judge's order "is not contrary to law for failing to follow nonbinding precedent." *Stevens-Bratton*, 2020 WL 3086571, at *3; *see also White v. City of Cleveland*, 417 F. Supp. 3d 896, 909 (N.D. Ohio 2019) (objector's citation to a nonbinding case "closer to being on point" is "not enough to conclude the [m]agistrate [j]udge's decision was clearly erroneous or contrary to law").

At bottom, although this Court may have exercised the wide discretion afforded the federal judiciary on motions to exclude expert testimony differently than did Judge Claxton if the issue had been before the undersigned in the first instance, Plaintiff bears the burden of showing that her

---

[5]The Court notes at this point that some of Plaintiff's factual assertions regarding the content of Gravette's report and supplemental/rebuttal report appear to be belied by the record. Delk emphasizes in his appeal brief that his expert's methodology was grounded not only in his experience but in industry standards provided by ACA and Performance Based National Detention Standards. When asked in his deposition, however, whether he relied on ACA standards or sample policies in preparing his reports, Gravette responded that he "did not reference the ACA in [his] report." (D.E. 31-4 at PageID 262.) Performance Based National Detention Standards received mention only in his curriculum vitae, not his reports. (*See* D.E. 31-2 at PageID 248.)

[6]Neither party brought the case to the magistrate judge's attention.

11

decision was clearly erroneous or contrary to law.  In the Court's view, he has fallen short of doing so.  As a district judge from this circuit put it:

> The undersigned district judge does not write on a blank slate when reviewing an order of a magistrate judge on a non-dispositive matter.  Even if a district judge could be persuaded that he or she would have found facts differently, or would have viewed applicable law somewhat differently or viewed an argument differently, that would be insufficient to reverse the order.  Instead, the undersigned must go further and conclude that the magistrate judge drew a legal conclusion that was contrary to law or made a clearly erroneous finding of fact.

*Doe #11 v. Lee*, No. 3:22-cv-00338, 2023 WL 1929996, at *9 (M.D. Tenn. Feb. 10, 2023).

The appeal is OVERRULED and the magistrate judge's order is AFFIRMED.

IT IS SO ORDERED this 11th day of September 2023.

s/ J. DANIEL BREEN  
UNITED STATES DISTRICT JUDGE
